UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES GOLD<br>15 Norrans Ridge Dr.<br>Ridgefield CT 06877<br><br>MICHAEL MCMAHON<br>60 Hammond Hill<br>Saunderstown, RI 02874<br><br>HY SAPORTA<br>2 Grouse Path<br>Westport, CT 06880<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL MAURER<br>4715 North Dittmar Road<br>Arlington, VA 22207<br><br>Defendant. | Case No.: ___________ |

**COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION IN AID OF ARBITRATION**

This Complaint seeks a temporary restraining order and preliminary injunction against Michael Maurer ("Mr. Maurer" or "Defendant"), who has been publishing defamatory statements about Plaintiffs. As a result of Defendant's continued defamatory statements, Plaintiffs James Gold ("Mr. Gold"), Michael McMahon ("Mr. McMahon"), and Hy Saporta ("Mr. Saporta") (collectively "Plaintiffs") – private citizens –have suffered and will suffer injury to their reputations and have sustained and will sustain substantial damages.

Plaintiffs have filed a demand for arbitration with the American Arbitration Association alleging that Defendant defamed them and breached his fiduciary duty and contractual obligations. Plaintiffs have reason to believe, on information and belief, that Defendant will

make further false, defamatory statements about them at a meeting he has scheduled for next week, before the arbitrator can be selected and the arbitration convened. Plaintiffs request an Order to maintain the status quo and prevent Mr. Maurer from publishing any new defamatory and false statements, pending the outcome of arbitration. Without an Order from this Court requiring Defendant to cease and desist publishing defamatory and false statements, Plaintiffs will be irreparably harmed.

## PARTIES

1. Plaintiffs are all Directors of Steward Partners Holdings, LLC ("Steward"). Steward is a Delaware Limited Liability Company with its principal office located in Washington, D.C., and various regional offices. For all periods relevant to this Complaint, Steward has been governed by an LLC Operating Agreement. The valid and enforceable Operating Agreements relevant to this Motion include: the Limited Liability Company Agreement for Steward Partners Holdings, LLC, dated May 12, 2014 ("2014 Agreement"), the Amended and Restated Limited Liability Company Agreement of Steward Partners Holdings, LLC dated November 10, 2015 ("2015 Agreement"), and the Amended and Restated Limited Liability Company Agreement of Steward Partners Holdings, LLC dated November 16, 2016 ("2016 Agreement"). Steward Partners Global Advisory ("SPGA") is a wholly owned subsidiary of Steward. Its Board of Directors is comprised of the same Directors as Steward's Board. SPGA is a leading independent, private financial services firm, with professionals delivering multifaceted financial solutions and "platinum" level service to clients and their families. SPGA professionals offer comprehensive wealth planning and investment strategy implementation, professional asset management services, private banking, institutional consulting, international advisory, and business solutions.

2. Plaintiff James Gold is the Chief Executive Officer of Steward and a member of Steward's Operating Committee. At all relevant times, Mr. Gold served as a Director on Steward's Board of Directors. Mr. Gold was a founding Member of Steward. In his various roles with Steward and SPGA between 2013 and the present, Mr. Gold provided overall firm leadership and managed recruiting, sales management and public relations. Mr. Gold is a signatory to the 2014 Agreement, the 2015 Agreement, and the 2016 Agreement.

3. Plaintiff Michael McMahon is, and at all relevant times has been, the Chairman of the Board of Directors at Steward. Mr. McMahon is a signatory to the 2014 Agreement, the 2015 Agreement, and the 2016 Agreement.

4. Plaintiff Hy Saporta is the President and Chief Operating Officer of Steward. Mr. Saporta was a founding Member of Steward. At all relevant times to this suit, Mr. Saporta served as a Director on Steward's Board of Directors. In his various leadership roles since 2014, Mr. Saporta has managed legal, human resources, technology, finance, payroll, business operations, and real estate for Steward and SPGA. Mr. Saporta is a signatory to the 2014 Agreement, the 2015 Agreement, and the 2016 Agreement.

5. At all relevant times, Defendant Michael Maurer served as a Director on Steward's Board of Directors. Along with Mr. Gold and Mr. Saporta, Mr. Maurer was a founding Member of Steward. Throughout Mr. Maurer's relationship with Steward, his responsibilities and authorities were gradually reduced due to his malfeasance and erratic behavior. Due to Mr. Maurer's misconduct in 2015, Steward initially limited Mr. Maurer's authority and ability to make unilateral decisions. After Mr. Maurer's malfeasance, poor judgment and recklessness continued in 2016, Mr. Maurer and Steward negotiated that Mr. Maurer would leave his position as Chief Executive Officer and Managing Member, to transition

to Founder-Non-Executive Chairman, in the 2016 Agreement. Mr. Maurer served in this position until finally, on or about January 23, 2017, the Board of Directors and the Senior Membership voted to expel Mr. Maurer for cause, effective on or about March 3, 2017. Mr. Maurer is a signatory to the 2014 Agreement, the 2015 Agreement, and the 2016 Agreement.

## JURISDICTION AND VENUE

6. This Court's jurisdiction arises under 28 U.S.C. § 1331, the Federal Arbitration Act, 9 U.S.C. *et seq.*, and the Operating Agreements. Further, there is complete diversity of citizenship and Plaintiffs seek injunctive relief valued above $75,000. 28 U.S.C. § 1332.

7. All applicable Operating Agreements contain the following arbitration clause:

> Any dispute, claim, or controversy concerning this Agreement...will be submitted to arbitration under the rules of the American Arbitration Association ("AAA") in Washington, D.C., which will be the only forum for the resolution of disputes arising hereunder. A single arbitrator will be designated by the AAA. An arbitration award under the rules of the AAA will be final and judgment on the award rendered may be entered in any court, state, or federal, having jurisdiction. **<u>Notwithstanding the generality of the foregoing, this Section does not limit the rights of the parties in seeking injunctive relief prior to or during any arbitration proceedings solely for the purposes of aiding or preserving a party's legal right that is to be or is being decided by arbitration</u>**.
>
> 2014 Ag. § 15.22(b); 2015 Ag. § 15.22(b); 2016 Ag. § 15.22(b) (emphasis added).

8. All applicable Operating Agreements contain the following choice of law and venue clause:

> This Agreement and the rights of the parties hereunder shall be governed by, interpreted and enforced in accordance with the laws of the State of Delaware without regard to conflicts of law principles and the venue of any dispute among the Members shall be the appropriate local or federal court in Washington, D.C.

2014 Ag. § 15.14; 2015 Ag. § 15.14; 2016 Ag. § 15.14.

9. The Court has personal jurisdiction over Mr. Maurer because Mr. Maurer was a Member and Director of Steward, which established its principal place of business in

Washington, D.C. Further, Mr. Maurer has had contacts with Washington, D.C., including, working out of Steward's Washington, D.C. office during the time that he made various defamatory statements.

10. The Operating Agreements place Washington, D.C. as the appropriate venue. Further, Mr. Maurer was working out of Steward's Washington, D.C. office during the time that he made various defamatory statements.

## THE ARBITRATION

11. On April 19, 2017, Plaintiffs and Steward filed a demand for arbitration with the American Arbitration Association, naming Defendant Mr. Maurer and another individual, Ari Wilkenfeld, as respondents. The arbitration complaint includes claims for defamation, breach of fiduciary duty and breach of contract. In the arbitration, Plaintiffs seek a permanent injunction against defamation by Defendant, as well as damages and other relief.

12. It is likely to take several months, or at least several weeks, before the arbitration can address issues of an injunction to prevent further defamation. The arbitration begins with a process of selecting an arbitrator, and that process alone may take several weeks. Thereafter, the arbitrators may require discovery and other proceedings before proceeding to a hearing. Plaintiffs seek temporary and preliminary relief from this Court to maintain the status quo and prevent further defamation until such time as the arbitration can address the underlying claims.

13. The arbitration complaint's allegations of breach of fiduciary duty and contract, and defamation, are summarized below:

a. *Breach of Fiduciary Duty and Contract*. During the pendency of his tenure with Steward, Mr. Maurer knowingly and willfully breached the terms of the Operating Agreements, and breached his fiduciary duties and contractual obligations to

Steward and its Members/Directors, in numerous instances, including but not limited to: wiring at least $50,000 from Steward's corporate account to his friend to buy an engagement ring, spending Steward corporate funds on rugs and decorations for his home, unilaterally promising his friends and former colleagues excessive compensation and benefits, lying to Directors/Members of Steward about the salary and benefits he had offered his friends and former colleagues, and abandoning his managerial responsibilities, including but not limited to failing to show up at work for weeks at a time, missing management team calls and other important meetings, and bringing weapons to the D.C. office. Mr. Maurer committed fraud, deceit, and willful misconduct, did not exercise the reasonable care of an ordinarily prudent person in a like position under circumstances, did not act in good faith, and could not have reasonably believed his actions were in the best interest of Steward or its Directors/Members.

b. *Defamation in December 2016.* Mr. Maurer published defamatory statements about Plaintiffs. On or about December 15, 2016, Mr. Maurer sent Steward Directors Janet Robinson, Dan Polk, and Gary Miller, an email falsely stating that: Mr. Gold said "he wanted to drop an Anvil on my head;" Mr. Gold made "threats, subtle and not so subtle;" Mr. McMahon "shar[ed] private and confidential conversations I have had with him;" Mr. Saporta "pressured me to sign the Operating agreement," and all three Plaintiffs have "conflicts of interest." These statements were all false, and Mr. Maurer knew they were false. These allegations resulted in an investigation by a special committee of Steward's

Board. The Board found the allegations to be meritless, but Plaintiffs' reputations were injured by the false allegations.

14. On or about January 23, 2017, the Board of Directors voted to expel Mr. Maurer pursuant to the 2016 Agreement's Expulsion clause. *See* 2016 Ag. § 11.1. The Board of Directors voted that Mr. Maurer should be expelled for reasons including, but not limited to: Mr. Maurer's willful actions that injured or had the potential to injure the reputation or professional standing of Steward, Mr. Maurer's breach of provisions of the various Agreements and of his fiduciary duty, and his subsequent failure to cure upon warning by other Directors/Members, Mr. Maurer's misappropriation, diversion, fraud or unauthorized conveyance of Company assets, Mr. Maurer's failure to perform the duties assigned to him, and Mr. Maurer's gross negligence and willful misconduct with respect to his assigned duties.

15. Since his expulsion, Mr. Maurer has continued to publish to Steward's business contacts defamatory and false statements that have, and will, irreparably harm Plaintiffs. The arbitration complaint's allegations of defamation, are summarized below:

a. *Defamation in March 2017.* On or about March 6, 2017, Mr. Maurer sent an email to three executives of a financial industry organization making the defamatory statement that Plaintiffs were making false accusations against him in public. Mr. Maurer's statements were false, and Mr. Maurer knew they were false. Neither Mr. Gold, Mr. McMahon, Mr. Saporta, nor any of Steward's Directors/Members/Officers have made any statement to the press or media about the Board of Directors' vote to expel Mr. Maurer. In fact, when contacted about an AdvisorHub article regarding the expulsion, Steward and its

Directors/Members declined to comment. The article stated: "Gold declined to comment." Mr. Maurer's false statements injured the Plaintiffs' reputations.

b. *Further defamation in March 2017.* In the March 7, 2017 AdvisorHub article in which Plaintiffs refused to comment, Mr. Maurer's counsel, acting as his agent and individually, published a false and defamatory comment alleging that Steward's Board of Directors engaged in a "power grab" and improper self-dealing when expelling Mr. Maurer:

> I want to characterize what has happened here as a rather ugly power grab. There's no coincidence that his removal, which benefits those who remain, has occurred in such close proximity to the excellent forecasts regarding profitability going forward.

*Fast-Growing Advisory Firm Steward Partners Suffers Partner Clash*, AdvisorHub (Mar. 7, 2017) available at: https://advisorhub.com/fast-growing-advisory-firm-steward-partners-suffers-partner-clash/ (emphasis added). AdvisorHub is a public website that seeks to be the preeminent source of news in the wealth management industry. The readership of AdvisorHub includes Steward's current and potential clientele, recruits, and industry partners. Plaintiff's counsel's statement was plainly false: The Board of Directors voted to expel Mr. Maurer because of his copious breaches of fiduciary duty and violations of his Agreements. The Directors' decision did not constitute any form of self-dealing or a power grab. Mr. Maurer was aware of the reason for his termination; the reasons for his termination had been provided to him. Mr. Maurer's defamatory allegation, via his counsel, that the Board of Directors engaged in self-dealing has damaged Steward's reputation and caused Steward substantial financial losses. Since the publication of the AdvisorHub article, Steward

potential recruits, clients, and potential clients, have contacted Directors/Members to stall, limit, or retract current and prospective deals or arrangements with Steward due to the negative press. Steward has lost business opportunities due to the AdvisorHub article.

16. Imminent additional defamation. On information and belief, Mr. Maurer has requested a meeting with executives of a financial company which provides essential services to Steward, to occur as soon as next week. On information and belief, Mr. Maurer intends to publish additional defamatory statements at this meeting. On information and belief, those defamatory statements are intended to and will cause irreparable injury to Plaintiffs' reputations and to Steward's business unless they are enjoined.

17. Plaintiffs seek injunctive relief in this Court solely for the purposes of aiding or preserving Plaintiffs' legal rights that are being decided by arbitration. Plaintiffs seek a Temporary Restraining Order and a Preliminary Injunction in order to maintain the status quo and prevent further defamation of them pending the outcome of their defamation and breach of fiduciary claims in arbitration.

## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

18. Plaintiffs are likely to succeed on the merits in proving that Mr. Maurer defamed them. Mr. Maurer knowingly, recklessly, and maliciously published defamatory and false statements to third parties causing Plaintiffs irreparable harm and substantial damages.

19. Plaintiffs have credible reason to believe that Mr. Maurer will again defame Plaintiffs by publishing defamatory and false allegations about Plaintiffs at his meeting next week with a financial organization that provides essential services to Steward.

20. Plaintiffs have credible reason to believe that Mr. Maurer will defame Plaintiffs by publishing defamatory and false allegations about Mr. Maurer's expulsion in the press.

21. Prior defamatory statements by Mr. Maurer and his agents have affected Steward's ability to consummate business deals and recruit top-tier candidates, have damaged Plaintiffs' reputations, and have caused, and will cause serious injury to Steward's business. Mr. Maurer's future defamatory comments would likewise cause irreparable harm.

22. Emergency relief is necessary to prevent Mr. Maurer from publishing defamatory and false statements at his impending meeting with Steward's core business partner.

23. Defendant will not suffer any harm from enforcement of this bar on defamatory statements.

24. The public interest weighs in favor of granting this immediate equitable relief.

25. The balance of the hardships weighs decidedly in Plaintiffs' favor. There will be significant irreversible harm to Plaintiffs if Defendant is not enjoined from publishing defamatory statements about Plaintiffs. Conversely, if this Court prevents Defendant from publishing defamatory and false statements, it would merely maintain the status quo and would cause Defendant to comply with his legal requirements.

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter a temporary restraining order and preliminary injunction prohibiting Defendant, directly or indirectly, from disparaging any of the Plaintiffs and/or Steward;
b. Enter such other injunctive and other relief as the Court deems just and proper to preserve the status quo until the underlying claims can be resolved in arbitration.

Respectfully submitted,

By: ______________________________

Barbara Berish Brown, Esq. (DC Bar No. 355420)
Kenneth M. Willner, Esq. (DC Bar No. 415906)
Paul Hastings LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700