**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                              |                                |
| ---------------------------- | ------------------------------ |
| JAMES GOLD, *et al.*,        |                                |
|    *Plaintiffs*, |                             |
| v.                           | Civil Action No. 17-734 (CKK)  |
| MICHAEL MAURER,              |                                |
|    *Defendant*. |                              |

**MEMORANDUM OPINION**
(May 1, 2017)

Plaintiffs are three executives of a financial services provider who seek injunctive relief against Defendant, a former executive, to preclude him from repeating certain allegedly defamatory statements at an impending business meeting. Presently before the Court is Plaintiffs' [2] Motion for a Temporary Restraining Order and Injunction in Aid of Arbitration ("TRO Motion"). Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of the pending motion, the Court concludes that none of the preliminary injunction factors weigh in favor of granting injunctive relief in this matter. Accordingly, Plaintiffs' [2] TRO Motion is **DENIED**.

**I. BACKGROUND**

Plaintiffs are all directors of Steward Partners Holding, LLC, which provides "multifaceted financial solutions and 'platinum' level service to clients and their families" through a wholly-owned subsidiary, Steward Partners Global Advisory (collectively, "Steward"). Compl. ¶ 1.

---

[1] The Court's consideration has focused on the following materials:

- Mot. for a Temporary Restraining Order and Prelim. Inj. in Aid of Arbitration, ECF No. 2 ("TRO Mot.");
- Def.'s Opp'n to Pls.' TRO Mot., ECF No. 10 ("Def.'s Opp'n");
- Pls.' Reply in Supp. of TRO Mot., ECF No. 12 ("Reply").

1

Plaintiff James Gold serves as Chief Executive Office of the company, Plaintiff Michael McMahon is the Chairman of the Board of Directors, and Plaintiff Hy Saporta is the President and Chief Operating Officer. *Id*. ¶¶ 2–4. Defendant Michael Maurer was a founding member of Steward, and also a Director of the company until he was removed from his position by the Board of Directors in January 2017, allegedly for cause. *Id*. ¶ 5; Decl. of Michael Maurer, ECF No. 10-1, ¶ 38. This action concerns certain statements that Defendant allegedly made prior to and shortly after his separation from Steward. The Court reserves its presentation of the content and context of these statements for its discussion of Plaintiffs' likelihood of success on the merits, below.

On April 19, 2017, Plaintiffs and Steward filed a demand for arbitration before the American Arbitration Association ("AAA"), seeking relief in the form of damages and a permanent injunction for claims of defamation—premised on the same statements that underlie the TRO Motion—as well as breach of fiduciary duty and breach of contract. Compl. ¶ 11. The arbitration was brought pursuant to an arbitration agreement in a series of contracts to which all of the parties are signatories, and no party contests the propriety of arbitration. Compl. ¶ 7. On April 20, 2017, the day after filing their demand for arbitration, Plaintiffs filed the TRO Motion with this Court. According to that motion, Defendant Maurer had allegedly scheduled a meeting, for as early as the week of April 24, 2017, "with executives of [a] financial company which provides essential services to Steward . . . ." TRO Mot. at 9. Plaintiffs claimed that, at this meeting, Defendant intended to "publish additional defamatory statements." *Id*. As a result, Plaintiffs sought emergency injunctive relief "solely for the purposes of aiding or preserving Plaintiffs' legal rights that are being decided by arbitration," and requested that the Court issue a temporary restraining order and preliminary injunction "prohibiting Defendant, directly or indirectly, from disparaging any of the Plaintiffs and/or Steward pending the resolution of the underlying claims in arbitration

. . . ." TRO Mot. at 9, 14.

Shortly after receiving the TRO Motion, the Court held a telephonic conference attended by counsel for both parties. Defense counsel represented that the meeting referenced in the TRO Motion, allegedly with a financial services company that the Court shall refer to simply as the "Business Partner," was unlikely to occur before mid-May. Minute Order, April 20, 2017. Moreover, the next day, Defendant filed a declaration wherein he represented that there was no meeting currently scheduled with the Business Partner, but that he had "been working to schedule a meeting with an employee or employees of [the Business Partner] sometime after May 14, 2017." Decl. of Michael Maurer, ECF No 6-1. In connection with his opposition, Defendant further informed the Court that he "do[es] not currently have a meeting scheduled with any representative of [the Business Partner,]" and that in his "most recent correspondence with [the Business Partner, Defendant] provided [his] availability for a meeting between May 10-22, 2017." Decl. of Michael Maurer, ECF No. 10-1, ¶¶ 1–2. Defendant also informed the Court that he has a significant, pre-existing financial and personal relationship with the Business Partner that is separate and apart from Steward, and that his brother and sister-in-law are both employees of the Business Partner. *Id*. ¶¶ 3–5.

During the aforementioned conference call, and solely in an attempt to foster an amicable resolution of this matter, the Court suggested an agreement that could have potentially resolved this matter without need for further proceedings before this Court. In particular, the Court instructed Defendant to file a notice on the docket in the event that he was willing to "agree to not repeat the statements described on pages 5 and 6 of the [TRO] Motion at the meeting described on page 7 of the [TRO] Motion . . . ." Minute Order, April 20, 2017. Nonetheless, the Court emphasized that "[d]efense counsel did not have an opportunity prior to the conference call to

review the pleadings or discuss with Defendant whether he would agree to not repeat the [pertinent] statements . . . ." *Id.* In his opposition to the TRO Motion, Defendant declined to enter such an agreement, primarily because no such meeting is scheduled; because he has family members who are employees of the Business Partner; because he has as a relationship with the Business Partner that predates the founding of Steward; and because he views the pertinent statements as true, and may need to honestly answer questions regarding the circumstances of his departure from Steward in order to "maintain longstanding and important business relationships for future jobs." Opp'n Mem. at 3. Plaintiffs have sought to make Defendant's decision to decline the agreement relevant to this Court's resolution of the TRO Motion, contending that it is further evidence of Defendant's intent to defame Plaintiffs. Reply at 1. The Court, however, does not in any way hold Defendant's decision against him, as the agreement was suggested by the Court solely as a *potential* means of amicably resolving this lawsuit, and at no time did defense counsel or Defendant affirmatively state that they would enter such an agreement.

Several days after the initial conference call, by Minute Order dated April 24, 2017, the Court provided additional instructions regarding the content of the parties' briefing of the TRO Motion. Because Plaintiffs had represented that it was unlikely that an arbitrator could be appointed prior to the week of May 14, 2017, *see* ECF No. 7, the Court required Plaintiffs to "recount in their reply the steps that have been taken to seek expedited appointment of an arbitrator to adjudicate their request for emergency relief, and [to] attach any correspondence with the AAA regarding these efforts." The Court, in particular, referred Plaintiffs to Rule 38 of the AAA's Commercial Arbitration Rules, which provides that "[w]ithin one business day of receipt of notice . . . , the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications." In their Reply, Plaintiffs have relayed that despite their best efforts to expedite the

4

appointment of an arbitrator, as evidenced by correspondence with the AAA, the arbitrator selection process will not begin until May 8, 2017. Nonetheless, Plaintiffs indicated that the process could be completed in only a few days once it begins, assuming that Defendant cooperates in the selection of an arbitrator. Reply at 3. Plaintiffs, however, have not attempted to seek emergency appointment of an arbitrator pursuant to Rule 38, claiming that such an appointment would "not necessarily [be] significantly faster than the process as it has played out so far under Plaintiffs' efforts to expedite . . . ." Reply at 5. However, Rule 38, by its own terms, provides for the appointment of an emergency arbitrator within one day—substantially faster than the current timetable described by Plaintiffs.

Finally, by way of their Reply, Plaintiffs have also sought to substantially narrow the scope of the injunctive relief they seek through the TRO Motion. Unlike their original broad request for an order "prohibiting Defendant, directly or indirectly, from disparaging any of the Plaintiffs and/or Steward pending the resolution of the underlying claims in arbitration," Plaintiffs now only seek a "temporary restraining order for fourteen (14) days to prevent Defendant from repeating the same defamatory and false statements described in the underlying motion to Steward's key business partner." Reply at 2; *see also* Proposed Order, ECF No. 12-10.[2]

## II. LEGAL STANDARD

A temporary restraining order or preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v.*

---

[2] Although Plaintiffs have narrowed their requested relief, and now only seek a temporary restraining order, the Court nevertheless analyzes the TRO Motion as a request for both a preliminary injunction and a temporary restraining order, as the arguments and evidentiary basis for both types of injunctive relief, under the circumstances of this case, are identical. Consequently, the Court's denial of the TRO Motion constitutes a denial of both Plaintiffs' request for a preliminary injunction, as well as their request for a temporary restraining order.

5

*Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (emphasis in original; quotation marks omitted)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (quoting *Winter*, 555 U.S. at 20) (alteration in original; quotation marks omitted)). "'When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.'" *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)). "The four factors have typically been evaluated on a 'sliding scale.'" *Davis,* 571 F.3d at 1291 (citation omitted). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

The Court notes that it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. US. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting *Davis*, 571 F.3d at 1296 (concurring opinion)). However, the D.C. Circuit has yet to hold definitively that

6

*Winter* has displaced the sliding-scale analysis. *See id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112. In any event, this Court need not resolve the viability of the sliding-scale approach today as the Court determines that "a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis." *Sherley*, 644 F.3d at 393.

## III. DISCUSSION

The Court proceeds by assessing each of the preliminary injunction factors in turn. For the reasons stated, the Court concludes that Plaintiffs have not shown that any one of the four factors weighs in their favor. Accordingly, the TRO Motion shall be denied.

### A. *Likelihood of Success on the Merits*

To succeed on a claim for defamation under District of Columbia law, a plaintiff must prove "(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm." *Farah v. Esquire Magazine*, 736 F.3d 528, 533–34 (D.C. Cir. 2013) (citations omitted). "Defamatory meaning and falsity are distinct elements of the tort of defamation and are considered separately." *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990). Here, the Court's analysis begins and ends with the threshold issue of whether the statements underlying the TRO Motion are actually false. Simply put, given the current record and procedural posture of this matter, there is no way for the Court to determine which party has the better end of the argument, and as such, the Court cannot conclude that Plaintiffs (or Defendant) have a likelihood of success on the merits.

Three categories of allegedly false statements underlie the TRO Motion. First, Plaintiffs allege that Defendant sent an email to several Steward directors on December 15, 2016 (the "December Email") wherein he recounted that: (i) Plaintiff Gold had told him that "he wanted to

7

drop an anvil on [Defendant's] head" and made "threats, subtle and not so subtle"; (ii) Plaintiff McMahon had "shared private and confidential conversations" that he had with Defendant on prior occasions; (iii) Plaintiff Saporta pressured Defendant to sign an operating agreement, which was negotiated in the fall of 2016 (the "Operating Agreement"); and (iv) all three Plaintiffs had conflicts of interest. Second, on March 6, 2017, and consequently after his separation from Steward in January 2017, Defendant allegedly "sent three executives of a financial industry organization an email making the defamatory statement that Plaintiffs were making false accusations against him in public." TRO Mot. at 5. Third, on March 7, 2017, Defendant's counsel commented to an industry publication that Defendant had been removed in an "ugly power grab" by Steward's Board of Directors, and that it was no coincidence that the removal occurred "in such close proximity to the excellent forecasts regarding profitability going forward," which Plaintiffs view as an accusation of self-dealing. TRO Mot. at 6.

Plaintiffs emphasize that the "evidence will undeniably show the falsity" of these statements. TRO Mot. at 8. However, the only such evidence originally proffered by the TRO Motion was a declaration by Plaintiff Saporta, wherein he stated, first, that "[t]hese statements were all false, and [Defendant] Maurer knew they were false," and, second, that Defendant had asked a special committee of the Board of Directors to abandon its investigation of the allegations made in the December Email. Decl. of Hy Saporta, ECF No. 2-2, ¶¶ 10–11. Plaintiffs have sought to supplement this minimal proffer with additional declarations attached to their reply memorandum. In particular, each Plaintiff has provided a declaration signed under penalty of perjury wherein he represents that he did not say what Defendant claims him to have said, and that each one of the other two Plaintiffs have likewise been falsely accused. *See* Decl. of James Gold, ECF No. 12-6; Decl. of Michael McMahon, ECF No. 12-7; Decl. of Hy Saporta, ECF No. 12-7.

Beyond these self-serving declarations, Plaintiffs reference two additional pieces of circumstantial evidence to prove the falsity of the relevant statements in the December Email. First, Plaintiffs cite to other emails and materials in which Defendant exchanged drafts of and referenced the Operating Agreement as evidence that Defendant was actively involved in the drafting of and fully endorsed the Operating Agreement. Reply at 8 (citing Ex. 4). Nevertheless, it appears that these emails, which span between September and November 2016, predate the incident in which Plaintiff Saporta allegedly pressured Defendant to sign the Operating Agreement, which according to Defendant occurred in December 2016. Def.'s Opp'n at 4. Plaintiffs also point to correspondence wherein Defendant used a "jovial tone" to communicate with Plaintiffs as evidence that Defendant was not mistreated by Plaintiffs. Reply at 9 (citing Ex. 4, at 20 ("You guys made it all too easy to say nice things about you!"), 23 ("Jim and Hy received well deserved promotions to CEO and President/COO, respectively."), 35 ("Great meeting boys.")). However, although Plaintiffs claim that these emails were each sent shortly after one of the incidents described in the December Email, there is no indication in the record, other than Plaintiffs' unsupported assertions, as to the specific dates on which those incidents occurred.

Finally, with respect to the allegedly defamatory statement that Defendant made on March 6, 2017 in an email to a financial services organization, Plaintiffs contend that they have not published any defamatory statements against Defendant, and that Defendant has not offered any evidence of such statements being made. With respect to the statement by Defendant's counsel on March 7, 2017, Plaintiffs contend that Defendant was terminated for cause, rather than for personal enrichment, as evidenced by an email from Steward's counsel to Defendant detailing the reasons for his expulsion from the company. Reply at 9, 12, Ex. 5 (email from John Scanlon to Defendant, which provides a written "statement of the specific grounds on which the board voted to separate

[Defendant] from the company").

Defendant, needless to say, asserts that his statements were true based on the information available to him, and that Plaintiffs have not provided sufficient evidence for the Court to conclude that Defendant's statements were false. Opp'n Mem. at 6. For his part, Defendant has furnished a sworn declaration wherein he emphasizes the veracity of each of the statements that Plaintiffs challenge as defamatory in the TRO Motion. *See* Decl. of Michael Maurer, ECF No. 10-1, at 2-3. Ultimately, however, whether the statements at issue are true or false turns principally on which side, Plaintiffs or Defendant, is telling the truth. Despite the additional evidence proffered in their Reply, Plaintiffs chiefly rely on their own testimony that they did not do what Defendant claims they did. The other evidence proffered, for the reasons stated above, is likewise open to interpretation; without further evidentiary development, the Court has no way to determine the significance of the emails and other materials upon which Plaintiffs seek to rely. Put differently, the Court is being asked to make credibility determinations on the basis of an emergency motion for injunctive relief. Absent a full evidentiary hearing, however, there is simply no way for the Court to competently make those determinations. Moreover, were the Court to hold such a hearing, it would supplant the very arbitration that the TRO Motion is meant to protect. In that scenario, the Court would essentially be adjudicating the merits of Plaintiffs' defamation claim, which must, and currently is, being pursued through arbitration before the AAA. That result would also be at odds with the very relief that the TRO Motion seeks, which is to preserve the status quo solely in aid of arbitration, until an arbitrator can be appointed. Adjudicating the merits of the parties' dispute would not preserve the status quo, but would in fact render nugatory the arbitral process by prematurely determining matters that should instead be determined by the arbitrator. Accordingly, the Court cannot on the basis of the current record and the current procedural posture

of this case make a determination as to the truth or falsity of the allegedly defamatory statements set forth in the TRO Motion. For that reason, the Court cannot conclude that Plaintiffs are likely to succeed on the merits of their claim that Defendant has made and will repeat certain allegedly defamatory statements.

Beyond the substantive merits of Plaintiffs' defamation claim, the Court is also concerned that granting even the more limited injunctive relief sought by Plaintiffs in their Reply would amount to an unconstitutional prior restraint on Defendant's freedom of speech. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights"). Currently, Plaintiffs seek an order that forbids Defendant from publishing "statement(s) substantially similar in content to any of the statements by or on behalf of Defendant summarized on pages 5 through 7 of [the TRO Motion], at any meeting with Plaintiffs' partner referenced on page 7, for fourteen (14) days . . . ." Proposed Order, ECF No. 12-10, at 2. Although far more limited than the injunctive relief initially sought by the TRO Motion, Plaintiffs request is still overly broad in two respects. First, although Plaintiffs assert in their Reply that they do not intend to restrain Defendant from discussing the circumstances of his departure from Steward with family members and colleagues at the Business Partner, with whom he has relationships that predates Steward, the Proposed Order would in effect preclude him from doing so, as it is not limited to any particular individual at the Business Partner. *See* Reply at 2. Second, and of more concern, is that the Proposed Order would preclude Defendant from making statements that are "substantially similar in content" to those detailed in the TRO Motion. In the Court's view, an order of this type would be unenforceable as an impermissible gag order precluding Defendant's speech on any occasion in which he chose to discuss the circumstances of his departure from Steward, as even generalized descriptions of those

11

circumstances could be viewed as "substantially similar in content" to the more specific statements listed in the TRO Motion. Accordingly, for this reason as well, the Court cannot conclude that Plaintiffs are likely succeed on the merits. *See Tory v. Cochran*, 544 U.S. 734, 738 (2005) (overturning injunction that amounted "to an overly broad prior restraint upon speech, lacking plausible justification"); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.C. Cir. 1990) (remanding with instructions to narrow scope of injunction that acted as a prior restraint).

B. *Irreparable Harm*

Defendant contends that Plaintiffs have failed to state with sufficient specificity how they will suffer irreparable harm were this Court not to issue the injunctive relief they seek by way of the TRO Motion. The Court agrees. Plaintiffs allege that they will suffer various additional injuries if Defendant's allegedly defamatory statements are repeated to the Business Partner. In particular, they represent that they have and will continue to suffer harm to their own business reputations, Compl. ¶ 16, and that Steward has been and will further be injured in its ability to recruit new employees and to attract and retain clients, TRO Motion at 12; *see also* Reply at 14 ("Absent this temporary restraining order, Defendant would be at liberty to repeat his defamatory and false statements to Plaintiffs' main business partner. Plaintiffs would suffer irreparable injury if Defendant is permitted to further injure their reputations and Steward's business through publishing more defamatory and false statements before the arbitrator has an opportunity to consider the defamation claims.").

Nevertheless, although Plaintiffs have specified, to some degree, the injuries that they will suffer absent injunctive relief, they have failed to explain in any detail how those injuries are irreparable. Plaintiffs are pursuing arbitration wherein they seek damages for Defendant's allegedly defamatory statements, and have not indicated, let alone explained why, they could not

be adequately made whole for the alleged injuries to their reputations and Steward's business through damages and other forms of relief that can be granted by the arbitrator. In fact, the injuries that the temporary restraining order is most likely to preclude—harm to Steward's relationship with the Business Partner—are also of the type that are mostly likely to be provable and compensable in the underlying arbitration by, for example, a showing of lost business revenue as a result of the impaired relationship.

On a more practical level, Defendant has represented that he does not currently have a meeting scheduled with the Business Partner, and that he has, at most, merely provided his availability for such a meeting during the period between May 10 to May 22, 2017. Plaintiffs have relayed that the arbitrator selection process will begin on May 8, 2017, and could conclude in a matter of days. That process could have begun even earlier had Plaintiffs pursued an emergency arbitrator appointment pursuant to Rule 38. As a result, there is no clear likelihood that any meeting with the Business Partner will occur prior to the selection of an arbitrator, and consequently, no clear likelihood that the specific harm that the injunction is meant to preclude—injuries stemming from Defendant relaying defamatory statements during such a meeting before an arbitrator can be appointed—will actually come to pass. Accordingly, for all of the foregoing reasons, Defendants have not made a sufficient showing of irreparable harm for the Court to weigh this factor in their favor.

C. *Balance of Equities*

The balance of equities in this matter is in equipoise. Plaintiffs, as already recounted, contend that without a temporary restraining order, Defendant will make additional defamatory statements against them to the Business Partner, which will lead to additional reputational and commercial harms before an arbitrator can be appointed to provide injunctive relief. Nonetheless,

this assumes that Defendant will hold a meeting with the Business Partner before an arbitrator can be appointed; that he will repeat the allegedly defamatory statements; and that such statements are indeed false. On the first two points, Defendant has represented to the Court that no such meeting is currently scheduled, and that one is unlikely to occur before mid-May. Decl. of Michael Maurer, ECF No. 10-1, ¶¶ 1–2. Moreover, based on the timetable described by Plaintiffs, an arbitrator should be appointed before mid-May, and the Court notes again the availability of an emergency appointment process under Rule 38. Needless to say, the Court expects Defendant to abide scrupulously to all of his representations before this Court, and to cooperate in good faith to obtain expedited appointment of an arbitrator.

In any event, issuing an order restricting Defendant from recounting the statements set forth in the TRO Motion, assuming they turn out to be true, may be just as injurious as not granting the order, assuming those statements turn out to be false. Defendant has represented that he has a pre-existing relationship with the Business Partner, a point that Plaintiffs do not contest. Defendant believes that Plaintiffs have disseminated falsehoods regarding the circumstances of his departure from Steward, and consequently, that he may need to make statements identical to those underlying the TRO Motion to the Business Partner and others, in order to safeguard his own reputation and well-being. Ultimately, each side of this dispute stands to gain or lose substantially depending on whether the Court does or does not issue a temporary restraining order, and the equities do not weigh in either party's favor, and so are in equipoise.

D. *Public Policy*

Plaintiffs contend that public policy favors entry of injunctive relief because it would protect Plaintiffs from further reputational and commercial injuries, and because of the strong federal policy in favor of enforcing arbitration agreements. TRO Mot. at 14. On the first point,

14

although the Court agrees that public policy weighs against defamatory practices, for the reasons already stated, the Court cannot conclude that the statements sought to be enjoined are false and therefore cannot conclude that they are defamatory. Moreover, the Court recognizes the equally important and countervailing public policy of not restraining speech *ex ante* in circumstances where the requested restraint would likely be overly broad and does not appear to be absolutely necessary, both because irreparable harm has not been shown, and because the factual premise necessitating the restraint, the immediate pendency of a business meeting, has been called into doubt.

Furthermore, the Court disagrees with Plaintiffs' contention that the relief they seek would facilitate arbitration. Generally, an injunction in aid of arbitration serves to preserve the jurisdiction and efficacy of the arbitral process. *See Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 372 F. Supp. 2d 83, 91 (D.D.C. 2005) ("an injunction in aid of arbitration is appropriate only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration" (internal quotation marks and alterations omitted)). Here, the activity that Plaintiffs seek to enjoin—Defendant publishing additional defamatory statements at a meeting with the Business Partner—would in no way impair the ability of the arbitrator, once appointed, to adjudicate the merits of the parties' dispute. Consequently, the arbitrator should be able to determine the merits of Plaintiffs' defamation claim and grant compensation for any additional injuries suffered if Defendant continues to engage in defamatory practices, as Plaintiffs allege. Indeed, rather than facilitating the arbitral process, the order that Plaintiffs seek would likely act as a short-circuit, requiring the Court to essentially adjudicate the merits of Plaintiffs' defamation claim because, as described above, the Court cannot determine the falsity of the statements underlying the TRO Motion without conducting what would amount to a full-fledged evidentiary

hearing. And were it to do so, the Court would in effect make crucial determinations as to the merits of the defamation claim that Plaintiffs must, as they concede, pursue through arbitration. That result would be at odds with the federal policy in favor of arbitration. Accordingly, the Court concludes that public policy does not favor injunctive relief under the circumstances of this case.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs have not demonstrated that any of the preliminary injunction factors weigh in their favor. Accordingly, the Court **DENIES** Plaintiffs' [2] Motion for a Temporary Restraining Order and Injunction in Aid of Arbitration.

An appropriate Order accompanies this Memorandum Opinion.

Dated: May 1, 2017

                                                      /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge